IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | INFORMATION |
| | : | |
| v. | : | CRIMINAL NO. 5:25-CR-_____ |
| | : | |
| RONNIE ATKINSON, | : | VIOLATIONS: |
| | : | 18 U.S.C. § 1349 |
| | : | 18 U.S.C. § 1344 |
| | : | 18 U.S.C. § 1028A(a)(1) |
| | : | 18 U.S.C. § 981(a)(1)(C) |
| | : | 18 U.S.C. § 982(a)(2)(A) |
| | : | 28 U.S.C. § 2461(c) |
| | : | |
| _____ | : | |

**THE UNITED STATES CHARGES:**

### GENERAL INTRODUCTION

At all times relevant and material to this Information:

1. Morris Bank was a financial institution as defined by Title 18, United States Code, Section 20, the deposits of which were insured by the Federal Deposit Insurance Corporation. Morris Bank had locations throughout the state of Georgia, including branches in the Middle District of Georgia.

2. A.C. was the Market President for the Gray, Georgia branch of Morris Bank. As Market President, he had lending authority up to $500,000.00 per customer "relationship." A "relationship" included all loans that could be associated with a particular customer. In order to lend money beyond $500,000.00 for a relationship, A.C. was required to obtain approval from the Senior Credit Officer for Morris Bank.

3. Factors to consider in approving any loan for Morris Bank included the borrower's ability to repay the loan, their financial condition, the loan purpose, and collateral.

1

4. When loans were approved, Morris Bank would issue a loan check. These loan checks were issued at the direction of the Loan Officer, such as A.C.. If the loan was for the purchase of an item, that loan check would typically be made out to the seller of that item.

5. **RONNIE ATKINSON** owned and operated Ronnie Atkinson Logging, LLC, which was a timber harvesting business.

6. K.M. managed Bolingbroke Enterprises d/b/a Kevin's Check Cashing (herein after "Kevin's Check Cashing"), a check cashing business located in Macon, Georgia. Kevin's Check Cashing was a domestic financial institution.

## COUNT ONE
### (Conspiracy to Commit Bank Fraud)

The allegations contained in paragraphs 1 through 6 of the General Introduction of this Information are incorporated by reference as if set forth fully herein.

Beginning on or about March 1, 2018, and continuing until on or about August 30, 2022, in the Macon Division of the Middle District of Georgia, and elsewhere within the jurisdiction of the court,

**RONNIE ATKINSON,**

did conspire with A.C., and with others both known and unknown to the Grand Jury, to commit an offense against the United States, that is, to knowingly devise, execute, and attempt to execute a scheme and artifice to defraud and to obtain money, funds, credits, assets, and securities owned by and under the custody and control of Morris Bank by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means whereby the conspiracy was sought to be accomplished were as follows:

1. In or around March 2018, **RONNIE ATKINSON** obtained his first loan from Morris Bank to purchase equipment. This loan, and all subsequent loans associated with **RONNIE ATKINSON**, were handled by A.C. with closing at the Gray, Georgia branch of Morris Bank.

2. In or around June 2019, **RONNIE ATKINSON'S** relationship had reached the maximum $500,000.00 threshold that A.C. was allowed to lend to.

3. Also in or around June 2019, **RONNIE ATKINSON'S** loans with Morris Bank were downgraded to substandard, which means they displayed a well-defined weakness or weaknesses that could jeopardize collection. These loans required close attention to avoid deterioration and potential loss. Morris Bank policy provided that renewals, modifications, or extensions of loans for relationships above $50,000.00 and graded substandard or worse required approval by the Credit Administration Officer or a member of the credit team.

4. Beginning in August 2019, and continuing through May 2022, **RONNIE ATKINSON** began having relatives and friends appear as straw borrowers for loans intended for **RONNIE ATKINSON'S** benefit. A.C. knew that these loans in the other individuals' names were actually for **RONNIE ATKINSON**. A.C. thus let **RONNIE ATKINSON** exceed his $500,000.00 lending limit without the proper approvals by making it appear these loans belonged to a different relationships. A.C. also did not seek the required approval for **RONNIE ATKINSON'S** loans that were graded substandard.

## Fraudulent Loan Information and Documents

5. For loans involving the purchase of goods, **RONNIE ATKINSON** would include a bill of sale that listed what was being purchased, the purchase price, and who the seller was. Many of these bills of sale were fraudulent.

   a. For example, on some occasions, **RONNIE ATKINSON** submitted fraudulent bills of sale that listed an inflated price for the item being purchased. Examples of these include the following loans:

| Date of Loan Application | Loan # | Purchase Price Listed on Fraudulent Bill of Sale | Actual Purchase Price | Seller Reported on Fraudulent Bill of Sale | Borrower Associated with Loan |
|---|---|---|---|---|---|
| 10/4/2019 | 4006180400 | $149,500.00 | $56,000.00 | D.K. | T.M. Jr. |
| 10/25/2019 | 4006231600 | $158,000.00 | $80,000.00 | C.J. | T.A. |
| 3/9/2020 | 4006588500 | $32,000.00 | $8,500.00 | K.D. | D.R. |
| 8/14/2020 | 4006983200 | $135,000.00 | $70,000.00 | K.W. | T.M. |

   b. On other occasions, the reported seller on the fraudulent bill of sale did not sell any items to **RONNIE ATKINSON** or anyone associated with him. Examples of these include the following loans:

| Date of Loan Application | Loan # | Loan Amount | Seller Reported on Fraudulent Bill of Sale | Borrower Associated with Loan |
|---|---|---|---|---|
| 3/8/2019 | 4005616700 | $57,500.00 | K.B. | **RONNIE ATKINSON** |
| 6/14/2019 | 4005865600 | $79,200.00 | J.W. | **RONNIE ATKINSON** |
| 8/9/2019 | 4006014700 | $145,000.00 | D.K. | T.M. Jr. |
| 10/4/2019 | 4006180400 | $149,500.00 | D.K. | T.M. Jr. |
| 10/11/2019 | 4006199300 | $8,250.00 of the $26,250.00 loan | R.B. | T.M. Jr. |
| 10/25/2019 | 4006231600 | $158,000.00 | C.J. | T.A. |
| 11/20/2019 | 4006303700 | $168,000.00 | C.J. | T.A. |
| 1/28/2020 | 4006495700 | $41,278.00 | H.O. | D.R. |

| Date | Loan # | Amount | Reported Seller | Reported Buyer |
|---|---|---|---|---|
| 3/9/2020 | 4006588500 | $25,500.00 of the $103,393.00 loan | M.J. | D.R. |
| 7/22/2020 | 4006932700 | $48,731.63 | R.W. Jr. | R.W. Jr. |
| 11/23/2020 | 4007202300 | $12,500.00 of the $131,735.93 loan | **RONNIE ATKINSON** and T.A. | D.R. |
| 11/23/2020 | 4007202300 | $31,000.00 of the $131,735.93 loan | **RONNIE ATKINSON** | D.R. |
| 12/23/2020 | 4007277900 | $42,000.00 | **RONNIE ATKINSON** | D.R. |
| 12/28/2020 | 4007282300 | $169,500.00 | T.K. Jr. | T.M. |
| 4/6/2021 | 4007528100 | $119,000.00 of the $270,309.53 loan | L.N. | T.A. |
| 4/28/2021 | 4007624700 | $166,900.00 | L.N. | Ta.B. |
| 6/18/2021 | 4007728200 | $171,589.00 | Te.B. | D.R. |
| 1/13/2022 | 4009466000 | $95,000.00 of the $114,000.00 loan | R.Mi. | R.Mc. |
| 1/13/2022 | 4009209600 | $239,000.00 of the $297,550.00 loan | H.C. | R.Mc. |
| 5/24/2022 | 4009406800 | $131,595.00 | M.A. | A.M. |
| 6/10/2022 | 4009159400 | $285,000.00 | M.A. | A.M. |

6. For both loans made to purchase items that the reported seller did not sell and those that were sold, but for a lower price, a Morris Bank loan check was issued to the reported seller. In some instances, these reported sellers were instructed to cash the check and provide the funds to **RONNIE ATKINSON**, or one of his relatives. Examples of these include:

| Loan # | Amount | Reported Seller | Who cash was given to |
|---|---|---|---|
| 4005865600 | $79,200.00 | J.W. | D.A. |
| 4006199300 | $8,250.00 of the $26,250.00 loan | R.B. | T.A. picked up R.B. while he was working for D.A. to cash the check. The cash was used to pay D.A.'s workers. |
| 4006495700 | $41,278.00 | H.O. | D.A. |
| 4006932700 | $48,731.63 | R.W. Jr. | **RONNIE ATKINSON** |
| 4007528100 | $270,309.53 | L.N. | **RONNIE ATKINSON** |
| 4007624700 | $166,900.00 | L.N. | **RONNIE ATKINSON** |
| 4007728200 | $171,589.00 | Te.B. | An unknown male at the direction of **RONNIE ATKINSON** |

5

7. On some occasions, A.C. would direct that cashier's checks be issued from the loan checks. For example, for R.Mc.'s loan for $297,550.00, two loan checks were issued to the reported sellers, one for $58,550.00 to W.S. and $239,000.00 to H.C. A.C. then instructed another Morris Bank employee to issue two cashier's checks to H.C. from the loan check, with both cashier's checks written for $119,500.00.

### Fraudulent Check Cashing

8. **RONNIE ATKINSON** brought several Morris Bank loan and cashier's checks to Kevin's Check Cashing to be cashed.

9. For some of the transactions with Kevin's Check Cashing, **RONNIE ATKINSON** brought the check's listed payee with him and had the payee give **RONNIE ATKINSON** the cash. For example:

    a. Morris Bank issued a $135,000.00 check to K.W. as a result of T.M. Jr's loan number 4006983200 to purchase a Tigercat. K.W. actually sold the Tigercat to **RONNIE ATKINSON** for $70,000.00. K.W. took the loan check to Kevin's Check Cashing where he cashed the check, keeping the $70,000.00 for the Tigercat and giving the remaining $65,000.00 cash to **RONNIE ATKINSON.**

10. For some of the transactions with Kevin's Check Cashing, **RONNIE ATKINSON** provided a picture of an identification card belonging to the person to whom the check was made out to in order to cash the check without the person being present. These listed payees did not sell anything to **RONNIE ATKINSON** or anyone associated with him and did not present the loan checks to be cashed. K.M. told his employees to cash the checks in this manner. For example:

| Date Cashed | Check Amount | Payee | How RONNIE ATKINSON had the payee's identification |
|---|---|---|---|
| December 29, 2020 | $169,500.00 | T.K. Jr. | T.K. had previously worked for **RONNIE ATKINSON** and had to show a copy of his driver's license to **RONNIE ATKINSON**. |
| March 7, 2022 | $95,000.00 | R.Mi. | R.Mi. had previously worked for **RONNIE ATKINSON** and gave **RONNIE ATKINSON** an expired paper ID card and never got it back. **RONNIE ATKINSON** also took a picture of another ID card that R.Mi. provided during his employment. |
| May 26, 2022 | $129,000.00 | M.A. | M.A. worked for **RONNIE ATKINSON** and gave him a copy of his driver's license. |
| June 10, 2022 | $285,000.00 | M.A. | M.A. worked for **RONNIE ATKINSON** and gave him a copy of his driver's license. |

11. K.M. further instructed his employees to file CTRs in the name of the person to whom the check was made out to and not to file them under **RONNIE ATKINSON'S** name, even though he was the person actually cashing the check.

### Conclusion

12. As a result of the conspiracy, Morris Bank issued a total of 57 loans to and for the benefit of **RONNIE ATKINSON**, totaling over $3,000,000.00.

all in violation of Title 18, United States Code, Section 1349.

### COUNT TWO
### (Aggravated Identity Theft)

The allegations contained in paragraphs 1 through 6 of the General Introduction of this Information are incorporated by reference as if set forth fully herein.

The allegations contained in the Manner and Means Section of Count One of this Information are incorporated by reference as if set forth fully herein.

That on or about December 29, 2020, in the Macon Division of the Middle District of Georgia,

RONNIE ATKINSON,

did knowingly possess and use, without lawful authority, a means of identification of another person, that is the driver's license belonging to T.K. Jr., during and in relation to a felony violation enumerated in 18 U.S.C. 1028A(c), to wit Conspiracy to Commit Bank Fraud as outlined in Count One, knowing that the means of identification belonged to another actual person; all in violation of Title 18, United States Code, Section 1028A(a)(1).

## FORFEITURE NOTICE
### (18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(2), and 28 U.S.C. § 2461(c) – Criminal Forfeiture)

1. The allegations contained in Counts One and Two of this Information are hereby re-alleged and incorporated by reference into this Notice for the purpose of alleging forfeiture to the United States of America, pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c); and/or Title 18, United States Code, Section 982(a)(2)(A).

2. Upon conviction of the offense(s) in violation of Title 18, United States Code, Section 1349, in connection with Title 18, United States Code, Section 1344 set forth in Count One of this Information, the defendant,

RONNIE ATKINSON,

shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property, constituting or derived from proceeds obtained, directly or indirectly, as a result of such violation, or a conspiracy to commit such offense.

3. Upon conviction of the offense(s) in violation of Title 18, United States Code, Section 1028(A)(a)(1) set forth in Count Two of the Information, the defendant,

RONNIE ATKINSON,

shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s), or a conspiracy to commit such offense.

4. The foregoing property includes but is not limited to a personal money judgment in an amount to be determined.

5. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

(a) cannot be located upon exercise of due diligence;

(b) has been transferred, sold to or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 28, United States Code, Section 2461(c) through Title 18, United States Code, Section 981(a)(1)(C).

All pursuant to 18 U.S.C. § 981, 18 U.S.C. § 982, and 28 U.S.C. § 2461(c).

C. SHANELLE BOOKER
ACTING UNITED STATES ATTORNEY

By: _____
ELIZABETH S. HOWARD
ASSISTANT UNITED STATES ATTORNEY